## L. ENGER v. MIDLAND NATIONAL LIFE INSURANCE COMPANY OF WATERTOWN, SOUTH DAKOTA.[1]

January 4, 1929.

No. 26,748.

See note in 23 L. R. A. 499; 30. A. L. R. 258, 280; 21 R. C. L. 1345; 3 R. C. L. Supp. 1227; 5 R. C. L. Supp. 1189; 7 R. C. L. Supp. 736.

*Ueland & Ueland,* for appellant.
*John B. Hanten* and *John G. Priebe,* for respondent.

HOLT, J.

The appeal is by plaintiff from an order vacating and setting aside the service of the summons.

The action is brought by a resident of Illinois to recover upon a policy of life insurance issued in North Dakota by defendant, a South Dakota corporation. The insured lived and died in North Dakota. Defendant is duly licensed to do business and is doing business in this state. The service of the summons was made upon the insurance commissioner of this state, who had been appointed

[1]Reported in 222 N. W. 901.

by defendant its attorney in fact to accept service of process "in any action or legal proceeding against said company as provided for by the laws" of this state in conformity to G. S. 1923, §§ 3711, 3713. Defendant appeared specially and moved to set aside the service. It was granted, and this appeal resulted.

It must be conceded that defendant duly licensed to do business and doing business in this state may be sued here upon any transitory cause of action. To do business it must act through domiciled agents of such character that service upon them will give jurisdiction of defendant. But the contention here is that no service was attempted upon such a general agent, and that the service provided for by G. S. 1923, § 3711, is limited to causes of action arising out of business transacted in this state by an insurance company with one of our residents.

The learned trial court in setting aside the service was no doubt largely influenced by State ex rel. Am. Cent. Life Ins. Co. v. Landwehr (Mo.) 300 S. W. 294, where the supreme court of Missouri reversed its former interpretation of a statute very similar to ours. It had held in Gold Issue M. & M. Co. v. Pennsylvania F. Ins. Co. 267 Mo. 524, 184 S. W. 999, that the statute authorized service on the insurance commissioner in any transitory action brought by a nonresident against a foreign insurance company authorized to do business and doing business in the state. This decision was affirmed in 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610. So that we have the highest authority in the land that our statute (G. S. 1923, § 3711) may be so construed as to hold the service made in this case valid. The Missouri court in reversing itself found in the history of the legislation in that state an intent to restrict and limit the service upon the insurance commissioner to causes of action arising from business transacted in the state. We see no indication of that sort in the history of the legislation upon that subject in our state or in this court's interpretation of such legislation. The first enactment relative to service of process on foreign insurance companies, L. 1876, p. 37, c. 20, is so plain and simple that it is difficult to read into it any restrictive provision as to the causes of action an

insurance company subjects itself to by coming into this state to do business and appointing the insurance commissioner its attorney in fact upon whom service of process may be made in "any action brought against it." The title of the act is: "An act relative to the service of process upon insurance companies not incorporated under the laws of this state."

Section 1 thereof reads: "No insurance companies (y) not incorporated under the laws of this state shall insure property or do business in this state until it has filed with the insurance commissioner a written stipulation, duly authenticated by the company, stipulating and agreeing that any legal process affecting such company, served on the insurance commissioner, shall have the same effect as if personally served on the company or its authorized attorney in this state."

Section 3 is: "So long as any liability of such stipulating company to any resident of this state shall continue, such stipulation shall not be revoked or modified, except that another shall be filed according to law."

The court in Baldinger v. Rockford Ins. Co. 80 Minn. 147, 149, 82 N. W. 1083, speaking of L. 1876, p. 37, c. 20, as also embodied in L. 1895, p. 392, c. 175, § 77—an insurance code—says:

"There is nothing, either in the history of the law or in its terms as re-enacted, that indicates that it was passed to restrict or limit the rights of our citizens. * * * It cannot be presumed, either, that the legislature intended to extend to foreign corporations privileges which it does not bestow upon our own corporations of the same character; but, if the views of the defendant are correct, there is but one method of service upon a foreign insurance company, while there may be several methods upon domestic companies."

And so the court in that case concluded that service was good when made upon an agent of the foreign insurance company which was doing business in this state; that L. 1895, p. 392, c. 175, § 77, was cumulative; and that it did not by implication repeal other statutes authorizing service on foreign corporations engaged in

business in this state. We know that foreign insurance companies licensed to carry on insurance business in this state also engage in such other business as may be authorized by their articles of incorporation or charters. Their funds are here loaned or invested and securities, such as real estate mortgages, taken. The only difference between the provisions in L. 1876 and that of L. 1895 is that §§ 1 and 3 of the former are condensed and put in one sentence in the latter, viz. under the third requirement of § 77. Both statutes contain the language that "all lawful processes in any action or legal proceeding against it" may be served upon the insurance commissioner the same as if served upon the company. L. 1876, p. 37, c. 20, was never expressly repealed until by the Revision of 1905, which also repealed L. 1895, p. 392, c. 175. The revisers however disclaimed any intent to change existing laws relating to insurance companies doing business in this state. Hence the form in which G. S. 1923, § 3711, now appears should not be held to modify L. 1876, p. 37, c. 20, as left by L. 1895, p. 392, c. 175, § 77. It may be conceded that one of the aims discerned in both acts is to make a foreign insurance company suable in this state upon any contract entered into with a resident here, even though it should wholly withdraw from doing business in the state. Magoffin v. Mutual R. F. Life Assn. 87 Minn. 260, 91 N. W. 1115, 94 A. S. R. 699. But this is not a case of ceasing to do business in this state by defendant.

If we look at the statutory provisions relating to the mode of service of summons so as to acquire jurisdiction of a defendant, a foreign insurance company, we find nothing indicative of a purpose to limit to certain causes of transitory actions the service upon the insurance commissioner. R. L. 1905 condensed and simplified the law relating to the manner of acquiring jurisdiction (see revisers report, p. 803, c. 79, § 55). Section 4109, subd. 3, thereof reads:

"3. If the defendant be a foreign corporation, the summons may be served by delivering a copy to any of its officers or agents within the state; if a foreign insurance corporation, two copies shall be delivered to the insurance commissioner, who shall file one in his

office and forthwith mail the other, postage prepaid, to the defendant at its home office."

The last clause is the same as now found in G. S. 1923, § 9231, and in compliance with which service was here made. If of any significance whatever these words, found in G. S. 1894, § 5200, relating to service of summons on foreign corporations, wholly eliminated by the revision, viz. "That the summons or any process in any civil action or proceeding wherein a foreign corporation or association is defendant, which has property within this state, or the cause of action arose therein, may be served by," etc. tend to show an extension rather than a limitation of actions in which foreign corporations might be sued.

So we find no tendency in the history of our legislation touching foreign corporations or insurance companies doing business in this state to limit the causes of transitory actions in which they may be subjected to suit, or to classify the causes of action so that in some service of summons must be made upon a general agent transacting their business in the state and in others it must be made upon the insurance commissioner. We think that a valid service may be made upon either. It is as likely that notice will as surely and expeditiously reach the foreign corporation when service is made upon the insurance commissioner as when made on an agent of the corporation residing here.

Likewise our decisions have placed no restrictions upon the causes of action in which a summons on foreign insurance companies doing business in this state under the authority of our law may be effectively served by serving upon the insurance commissioner. In addition to those cited we add State v. Queen City F. Ins. Co. 114 Minn. 471, 131 N. W. 628; Rishmiller v. D. & R. G. R. Co. 134 Minn. 261, 159 N. W. 272. The annotation to Lipe v. C. C. & O. Ry. Co. 30 A. L. R. 258, gives a very full citation of authorities on the construction of state statutes upon the subject here involved.

Since the decision in Pennsylvania F. Ins. Co. v. Gold Issue M. & M. Co. 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610, a foreign insurance company by coming into a state to do business and stipulating that

"legal process in any action or proceeding against it" may be served upon the insurance commissioner, "takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court." Mitchell Furniture Co. v. Selden Breck Const. Co. 257 U. S. 213, 216, 42 S. Ct. 84, 66 L. ed. 201. The decisions of Old Wayne Mut. Life Assn. v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. ed. 345; Simon v. Southern Ry. Co. 236 U. S. 115, 35 S. Ct. 255, 59 L. ed. 492, went on the proposition that a state statute providing that, where a foreign corporation doing business in a state fails to comply with a statute requiring it to appoint an agent upon whom process may be served in actions against it, service may be made on a designated state official, is invalid as to causes of action arising outside the state. Hunter v. Mutual R. Life Ins. Co. 184 N. Y. 136, 76 N. E. 1072, 30 L.R.A.(N.S.) 677, 6 Ann. Cas. 291, affirmed in 218 U. S. 573, 31 S. Ct. 127, 54 L. ed. 1155, 30 L.R.A.(N.S.) 686, decided that a foreign insurance company being admitted to a state to do business may withdraw therefrom, and after so doing may not be sued by service upon the insurance commissioner, except upon contracts entered into in the state with residents thereof previous to withdrawing.

So long as defendant is here doing business, having appointed the insurance commissioner and his successor in office its lawful attorney in fact and having agreed that legal process "in any action or legal proceeding against it" may be served upon them, we deem the service of this summons accordingly as effective to give jurisdiction over defendant as if served upon its principal agent through or by whom its business is being transacted in the state. The highest court of New York in Bagdon v. Philadelphia & Reading C. & I. Co. 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407, Ann. Cas. 1918A, 389, held that, "where a foreign corporation doing business in this state has designated a person as an agent upon whom process against the corporation may be served as provided in the statute (Gen. Corp. Law, § 16; Cons. Laws, c. 23), the agency of such person is not limited to actions which arise out of business transacted in this state." The decision distinguishes Old Wayne Mut. Life Assn.

v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. ed. 345; Simon v. Southern Ry. Co. 236 U. S. 115, 35 S. Ct. 255, 59 L. ed. 492.

The order is reversed.

STONE, J. (dissenting).

The limited purpose of the statute under consideration appeals to me in such fashion that I cannot accept, without protest, the view of the majority as to its interpretation. The language of the law is no more "plain and simple" than G. S. 1923, § 9405, having to do with the setting aside of a judgment procured by perjury. Yet upon consideration of its purpose and the test of application to its subject matter, it became plain that the law did not mean what it appeared to say. Therefore we have given it a very different meaning—one not at all consistent with literal rendition but wholly in keeping nevertheless with what appeared to be the real intention, which appeared readily enough when the language of the statute was put in the light of its purpose. Betcher v. Midland Nat. Bank, 167 Minn. 484, 209 N. W. 325. So here, we should not adhere too closely to "plain and simple" language when its literal interpretation leads to a result beyond the scope of the act of which it is a part.

The original law of 1876 dealt only with such foreign insurance companies as should "insure property or do business in this state" [§ 1]. Its main provisions are confined to that field. Therefore one merely incidental should not be given greater scope unless such meaning is expressed, for all the implications are against it. In construing statutes, "the particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense they were intended to be used as they are found in the act. The sense in which they were intended to be used furnishes the rule of interpretation, and this is to be collected from the context; and a narrower or more extended meaning is to be given according to the intention thus indicated." 2 Lewis' Sutherland Stat. Const. (2 ed.) § 376.

The Supreme Court of the United States follows the construction of a state statute put upon it by the highest court of the enacting

state and does so without questioning its propriety. But what that court would do with such a statute as that now under consideration, were they to construe it unhampered by local construction, is indicated by Mitchell Furniture Co. v. Selden Breck Const. Co. 257 U. S. 213, 42 S. Ct. 84, 66 L ed. 201, and Old Wayne Mut. Life Assn. v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. ed. 345. "In dealing with statutes providing for service upon foreign corporations doing business in the state upon agents whose designation as such is especially required," the Supreme Court of the United States has an avowed "leaning toward a construction where possible, that would exclude from their operation causes of action not arising in the business done by them in the state." Mo. P. R. Co. v. Clarendon B. O. Co. Inc. 257 U. S. 533, 42 S. Ct. 210, 66 L. ed. 354.

See also Hunter v. Mutual R. Life Ins. Co. 184 N. Y. 136, 76 N. E. 1072, 30 L.R.A. (N.S.) 677, 6 Ann. Cas. 291, affirmed 218 U. S. 573, 31 S. Ct. 127, 54 L. ed. 1155, 30 L.R.A. (N.S.) 686, and approved here in Braunstein v. Fraternal Union, 133 Minn. 8, 157 N. W. 721. Very early Vermont put a restricted construction upon a similar statute. Sawyer v. North Am. Life Ins. Co. 46 Vt. 697. In Missouri it has recently been adopted as the correct view as against earlier decisions holding the contrary. State ex rel. Am. Cent. Life Ins. Co. v. Landwehr (Mo.) 300 S. W. 294. To the same effect is National Liberty Ins. Co. v. Trattner, 173 Ark. 480, 292 S. W. 677.

I recognize the strength given the argument of the majority opinion by the traditional hospitality extended by Minnesota legislation and decision to transitory actions of foreign origin. In Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996, we found that our legislation had gone to an extent prohibited by the constitution of the United States. The opinion of the majority seems to oppose the settled opinion of the Supreme Court of the United States and, in my judgment, pushes the scope of the statute beyond anything intended by its authors.